UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHIQI CHEN,

Petitioner,

v.

TODD BLANCHE et al.,

Respondents.

CASE NO. 2:26-cv-02817-LK

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court on Petitioner Shiqi Chen's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons discussed below, the Court grants the petition.[1]

## I. BACKGROUND

Shiqi Chen is a native and citizen of China. Dkt. No. 5 at 2. On March 16, 2024, she entered the United States through the Peace Arch Port of Entry in Blaine, WA. *Id.* She was admitted on a B-2 visa as a visitor for a period not to exceed June 25, 2024. *Id.* She overstayed her visa and married Yutian Zou, a United States citizen, on August 21, 2024. Dkt. No. 7 at 16. On February 1, 2026, Customs and Border Protection ("CBP") Officers encountered Chen during pre-flight operations at the Luis Munoz Marin International Airport in San Juan, Puerto Rico. Dkt. No. 5 at

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized").

2. CBP served Chen with a Notice to Appear ("NTA"), charging her as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1227(a)(1)(B)). *Id.*; *see also* Dkt. No. 6-9 at 2 (finding Chen removable because she "remained in the United States for a time longer than permitted, in violation of this Act or any other law of the United States"). Chen was also served with a Notice of Custody Determination, and she indicated on the form that she did not request review of the custody determination by an immigration judge ("IJ"). Dkt. No. 5 at 2; Dkt. No. 6-8 at 2 (Notice of Custody Determination).

On February 3, 2026, Chen was transferred to Broward Transitional Center in Pompano Beach, Florida. Dkt. No. 5 at 2. The same day, Chen—at that point represented by counsel—filed a motion for custody redetermination in Guynabo Immigration Court in San Juan, Puerto Rico. *Id.* at 2–3. The Guynabo Immigration Court denied Chen's request for a change in custody status because it did not have jurisdiction over Chen, as she was detained at the Broward Transitional Center at the time. *Id.* at 3. On February 17, 2026, Chen refiled a request for custody redetermination before the Miami Krome Immigration Court. *Id.* On the same day, Chen's husband filed a Form I-130, Petition for Alien Relative, based on Chen's marriage to a United States citizen. *Id.* That petition is still pending. Dkt. No. 5 at 4. On February 19, 2026, an IJ at the Miami Krome Immigration Court denied bond to Chen, finding that she failed to demonstrate that she was not a flight risk. Dkt. No. 6-2. Chen reserved appeal of the decision to the Board of Immigration Appeals ("BIA"), but she has not appealed. *Id.*; Dkt. No. 5 at 3.

On February 26, 2026, Chen filed another request for custody redetermination before the Miami Krome Immigration Court. Dkt. No. 5 at 3. On February 27, 2026, she was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* On February 28, 2026, Chen's request for custody redetermination before the Miami Krome Immigration Court was

denied, as Chen had been transferred to NWIPC and there were no material changes in her circumstances. *Id.*; Dkt. No. 6-3.

On March 3, 2026, Chen filed another request for custody redetermination before the Tacoma Immigration Court. Dkt. No. 5 at 3. On March 11, 2026, the IJ denied her request, finding that there had been no change in circumstances since her prior custody redetermination request. *Id.*; Dkt. No. 6-4.

On April 14, 2026, the Department of Homeland Security sent a request to the United States Citizenship and Immigration Services ("USCIS") for expedited processing of the Form I-130. Dkt. No. 5 at 4. As of August 24, 2026, the form remained pending with USCIS. *Id.*

On June 4, 2026, Chen filed another request for custody redetermination before the Tacoma Immigration Court. *Id.* On June 23, 2026, the IJ again denied the request and issued an order explaining that

> on February 19, 2026, a prior Immigration Judge consider the factors presented in respondent's case: including that she does not fear of return to China; that she used an alias Alyssa Chen on EV-US return to the United States, online, and at school; that she previously had a student visa in Canada; she has 10 international flights in 5 years; her parents have no legal status in the United States; and that she married a United States citizen and filed a Form I-130, two days before that bond hearing. The prior Immigration Judge found based on these factors that respondent was a flight risk. Here the court does not find materially changed circumstances.

Dkt. No. 6-5 at 2.

On June 29, 2026, Chen appeared with counsel for a master hearing before the IJ at the Tacoma Immigration Court. *Id.* Chen's counsel requested a continuance, and her master hearing at the Tacoma Immigration Court was scheduled for August 27, 2026. *Id.*

Chen filed this petition for habeas corpus on August 7, 2026. Dkt. No. 1. Respondents[2] filed a return, Dkt. No. 4, and Chen filed a traverse, Dkt. No. 9.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the

## II. DISCUSSION

In her habeas petition, Chen alleges that her detention violates the Due Process Clause of the Fifth Amendment because "[t]here is no evidence in the record showing that [she] is a danger to the community or a flight risk." Dkt. No. 1 at 23. Chen alleges that she "has never had a bond hearing at which an Immigration Judge considered all relevant facts and made a lawful determination that she is a danger to the community or a flight risk." *Id.* at 24–25. Specifically, she argues that "[a]s a matter of law, using a preferred name, taking lawful international flights, having a previous student visa in Canada that is no longer valid, and not having parents with lawful status in the United States does not establish that [she] is a flight risk." *Id.* at 23. Chen seeks immediate release. *Id.* at 25. Respondents argue that Chen should not be excused from the prudential exhaustion requirement, and in any case, she was provided with a constitutionally sufficient bond hearing. Dkt. No. 4 at 7–18.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

---

petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Prudential Exhaustion is Not Required**

Chen argues in her petition that exhaustion is not required because she is not challenging a discretionary decision made by the IJ, but rather the constitutionality of her bond hearing. Dkt. No. 1 at 17. Thus, "[t]he question whether the specific facts of [her] case, as a matter of law, can sustain a finding of flight risk, 'needs no agency expertise.'" Dkt. No. 9 at 2 (quoting *Mendez-Reyes v. Scott*, No. 2:26-CV-01983-JNW, 2026 WL 2085251, at *2 (W.D. Wash. July 20, 2026)). Chen further contends that review by the BIA would be futile because "[t]he Board claims that it has no authority to address constitutional claims" and "the Board's official policy has been to deny bond

in every single case that comes before it." Dkt. No. 1 at 18–19. Respondents argue that Chen should be required to exhaust her administrative remedies because "the BIA has subject-matter expertise for individual immigration bond decisions, even if the BIA's review of the bond denial decision would not reach the specific constitutional claim raised in this case." Dkt. No. 4 at 11–12. According to Respondents, because Chen challenges only a fact-specific bond determination, "allowing further relaxation of the exhaustion requirement would continue to encourage other detainees to directly appeal their bond determinations to federal district court." *Id.* at 12.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

The *Puga* factors do not require exhaustion in light of the unique facts of this case. Specifically, the IJ's decision "is so plainly [constitutionally] inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision." *Cruz-Acevedo v. Scott*, No. 2:26-

CV-01654-LK, 2026 WL 1623154, at *4 (W.D. Wash. June 5, 2026). And unless most IJs begin issuing decisions with similarly deficient reasoning, there is no risk of encouraging deliberate bypass of the administrative scheme. *Id.* Furthermore, under the facts of this case, it is not difficult to conclude that Chen will suffer irreparable injury if her arguably unconstitutional detention continues while she awaits a BIA decision on the merits. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))).

In light of the *Puga* factors and irreparable injury, prudential exhaustion is not required here. The Court now turns to whether the IJ's decision was an abuse of discretion.

**C. The IJs Abused Their Discretion by Denying Bond**

Respondents argue that the Court lacks jurisdiction to review discretionary bond determinations, and even on the merits, the hearing provided to Chen was adequate. Dkt. No. 4 at 15–18. Chen argues that the first IJ (and the subsequent IJs who relied on the first IJ's reasoning) made "erroneous determination[s]" because "[t]here is no reliable evidence in the record available to Ms. Chen that indicates she is a flight risk." Dkt. No. 1 at 15–16.

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

However, Section 1226(e) does not "strip federal courts of 'traditional habeas jurisdiction.'" *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh*, 638 F.3d at 1202). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness

or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). In other words, Section 1226(e) "precludes federal courts from reviewing 'underlying factual determinations'" such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" but it does not bar review of pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id.* at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id.* at 785 (citation modified).

1. The IJ's Decision

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ's application of the above standard is a reviewable mixed question of fact and law, even though what constitutes a risk of flight or a danger to the community "is malleable and involves agency discretion," because federal courts can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano*, 2026 WL 969764, at *3 (finding jurisdiction to review IJ's bond denial based on flight risk finding); *W.T.M.*, 2026 WL 262583, at

*1 (same); *Vasquez Lopez v. Hernandez*, No. C26-0775-TSZ, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (same).

Accordingly, Chen's allegation in her habeas petition—that the IJ abused his discretion when he determined that she was a flight risk—presents a mixed question of fact and law that the Court has jurisdiction to review. The IJ at the February 19, 2026 bond hearing explained his reasoning for denying bond as follows:

> Counsel, flight risk is not limited to leaving the United States, one can easily flee within the United States. Just look at the number of people who've entered the United States illegally and managed to live here for ten, fifteen, twenty years under the radar. So, I am going to deny bond, finding that the respondent is a risk of flight. Respondent's use of an alias causes the Court concern. The fact that the Government has pointed out that Respondent has had ten international flights in five years, her parents are in the United States with no status and that is her means of support, her husband has no stable job, so, considering the totality of the evidence in this case, I am denying bond finding that the Respondent is a risk of flight. . . . I would also point out that [Respondent] ha[s] no relief apparently available to the Court in that [Respondent] said [she] has no fear of returning to [her] home country.

Dkt. No. 6-1 at 25:08–26:47 (audio recording of the February 19, 2026 bond hearing).

At Chen's most recent bond redetermination on June 23, 2026, the IJ relied on the prior IJ's reasoning in the February 19, 2026 bond hearing and found that there were no changed circumstances justifying a different outcome:

> [A] prior Immigration Judge considered the factors in respondent's case: including that she does not fear of return to China; that she used an alias Alyssa Chen on EV-US return to the United States, online, and at school; that she previously had a student visa in Canada; she has 10 international flights in 5 years; her parents have no legal status in the United States; and that she married a United States citizen and filed a Form I-130, two days before that bond hearing. The prior Immigration Judge found based on these factors that respondent was a flight risk. Here the court does not find materially changed circumstances.

Dkt. No. 6-5 at 2. In his oral decision, the prior IJ did not list "that [Chen] married a United States citizen and filed a Form I-130, two days before that bond hearing" in the factors he considered. Dkt. No. 6-1 at 25:08–26:47.

The IJ at the February 19, 2026 bond hearing did not describe the burden of proof in his decision. Section 1226(a) is silent as to which party bears the burden of proof or by what standard at a bond hearing. The Supreme Court also has not clarified the burden. *See* Sharon Shaji, Note, *The Due Process Owed to Noncitizens*, 44 Cardozo L.R. 1635, 1638 (2023) ("In the absence of guidance from the Supreme Court, federal circuit courts of appeals have produced a variety of approaches to burden of proof allocation in § 1226(a) bond hearings.").

The federal appellate courts that have addressed this question are split. The First and Second Circuits have held that the burden of proof for continued immigration detention must be placed on the government—but those Circuits do not agree on the standard of proof. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–41 (1st Cir. 2021) (applying the Supreme Court's *Mathews v. Eldridge* test before holding that with respect to a petitioner who had been in custody for ten months, the government bore the burden of proving danger by clear and convincing evidence or flight risk by a preponderance of the evidence); *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020) (applying the *Mathews* test before holding that, after a showing of prolonged detention, the government bore the burden of proving danger and flight risk by clear and convincing evidence).

The Third and Fourth Circuits have assigned the detainee the burden of proof on the questions of flight risk and danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (holding that requiring a Section 1226(a) detainee to show that he or she is not a danger or the community or a flight risk by a preponderance of the evidence does not violate the Due Process Clause); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277, 279 (3d Cir. 2018) (no due process violation with respect to burden remaining with detainee to show that he is not a danger to the community or a flight risk).

The Ninth Circuit has declined to require the government to meet a clear and convincing burden of proof to justify continued detention of a noncitizen in the specific context of a second bond hearing under Section 1226(a). *Compare Singh*, 638 F.3d at 1203 (holding that "[g]iven the substantial liberty interest at stake" for noncitizens subject to prolonged detention under Section 1226(a), "the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond"); *Martinez*, 124 F.4th at 786 (in a case involving a petitioner detained under Section 1226(c), describing *Singh* as "offer[ing] the high-water mark of procedural protections required by due process"); *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (noting that "after the Supreme Court's decisions in Jennings and Arteaga-Martinez, it remains undetermined whether the Due Process Clause requires additional bond procedures under any immigration detention statute," and concluding that the Due Process Clause did not entitle the petitioner "to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence").

2. <u>Abuse of Discretion</u>

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of the evidence, the Court finds that the first IJ abused his discretion in this case by finding Chen to be a flight risk. *See Martinez*, 124 F.4th at 779. The Court focuses on the first IJ's decision, as all subsequent bond determinations relied on a lack of changed circumstances based on the factors the first IJ considered.

First, Chen's use of a preferred name on an online visa form does not support a finding that she is a flight risk. There is no indication that she was living under an "alias" in order to evade detection or arrest by immigration officials. It is common knowledge that Chinese youth studying or moving abroad to an English-speaking country frequently "adopt an English personal name rather than using their Chinese names." Gregory S. Alexander, *Name Takings,* 19 NW. J.L. & Soc.

Pol'y 40, 67 (2023). "In one study of 156 Chinese students, 97.4% reported having a non-heritage (i.e., English) name[.]" *Id.* (citing Peter Sercombe, Tony Young, Ming Dong, & Lin Lin, *The Adoption of Non-Heritage Names among Chinese Mainlanders*, 62 Names 65, 69 (2014)). Indeed, "choosing an easier-to-pronounce first name is . . . . a tradition that goes back decades, intended to help immigrants and visitors assimilate more easily and avoid repeated mispronunciations and misspellings." Steve Holt, *Her Name Is Qiongyue. You Can Call Her "Joanna,"* Bostonia (Feb. 24, 2023), www.bu.edu/articles/2023/asian-students-english-names/; *see also Johnson & Johnson v. Rong Hai*, Case No. D2011-1673, 2011 WL 7030499, at *4 (WIPO Arb. & Mediation Ctr. Dec. 22, 2011) ("It is common practice for the Chinese to have English names that do not correspond to their Chinese names. For example, the movie star, Jackie Chan's English name has no connection to his Chinese name Cheng Long. Nor has the [actor] Bruce Lee's English name any connection to his Chinese name, Li Xiaolong."). Chen's testimony is consistent with common practice: she stated that she used the preferred name of "Alisa Chen" in school and with her friends because it is easier to pronounce. Dkt. No. 6-1 at 10:36–10:53; Dkt. No. 7 at 4; Dkt. No. 1 at 7. And she explained that she inadvertently used the name "Alisa Chen" on one form in the Electronic Visa Update System because she was not paying attention, the form was online, and she was used to using her preferred name on online forms and other documents for school. Dkt. No. 6-1 at 21:25–22:28. Chen uses her legal name when she travels because it matches her passport. *Id.* at 11:50–12:01. The IJ did not explain how Chen's use of her preferred name on one form and her legal name on all other official and travel documents establishes a risk of flight, and the Court can discern no such connection in the record before it. *See Garcia Miranda v. Herandez*, No. 2:26-CV-00906-JNW, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026) (concluding IJ's finding of flight risk based in part on an "inconsistent name and birthdate" appearing in the petitioner's immigration records could not be sustained in part because the petitioner "was forthcoming with

his correct name and birthdate at the time of his 2025 arrest"); *Rodriguez-Pineda v. Hernandez*, No. 26-CV-2367-MLP, 2026 WL 2321531, at *5 (W.D. Wash. Aug. 11, 2026) (concluding the petitioner's use of an alias thirty years ago to not support the IJ's finding of flight risk).

Second, the IJ provided no explanation tying Chen's expired Canadian student visa or travel history to her purported flight risk, nor did the IJ explain how the immigration status of Chen's parents weighed in favor of a finding that Chen will not appear at future court hearings. Chen's husband, with whom she was traveling at the time of her arrest in Puerto Rico, is a United States citizen and full-time student at the University of California, Berkeley. Dkt. No. 6-6 at 3; Dkt. No 6-1 at 3:11–3:14. Chen has lived with her husband in California since her entry into the United States in March 2024, her name is on their apartment lease, and they have been married since August 2024. Dkt. No. 6-1 at 3:15–4:05, 8:41-8:47, 14:42–14:45; Dkt. No. 7 at 16; Dkt. No. 7-1 at 90. The IJ incorrectly stated that Chen's parents were her sole means of support, *id.* at 25:08–26:47, as she testified that she also relies on her husband for support, *id.* at 12:51–13:05. Furthermore, the IJ failed to provide any explanation as to why he discounted Chen's lack of criminal history, or her prospects for permanent residence in the United States through her U.S. citizen husband and the I-130 application. *See* Dkt. No. 6-6 at 4. "The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors." *Vasquez Lopez*, 2026 WL 984151, at *3. "The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion." *Id.*

To the extent the IJ relied on Chen's lack of relief available to her because she stated that she does not fear return to China at her bond hearing, lack of relief from removal does not establish that Chen is a flight risk. Although IJs may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk, *see Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987), lack of relief from removal alone does not constitute evidence that a

noncitizen is a flight risk. *See Singh*, 638 F.3d at 1205 (a final removal order "alone does not constitute clear and convincing evidence that [a noncitizen] presented a flight risk justifying denial of bond"); *Tavurov v. Noem*, No. 2:26-CV 00668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) ("[T]he fact of a removal order is not sufficient by itself to deny bond" or establish flight risk); *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026) (noting that the fact that a noncitizen has unresolved claims for immigration relief "does not mean [the] noncitizen cannot be trusted to appear for future court proceedings on that basis alone").

In sum, the IJ failed to explain how the factors he considered established a flight risk, and failed to engage whatsoever with the factors weighing against such findings. As a matter of law, the facts of Chen's case cannot sustain a finding of flight risk. By failing to accord Chen the process due to her, the first IJ—and the subsequent IJs who relied on the initial decision—abused their discretion and violated Chen's Fifth Amendment rights. *See Minango v. Bondi*, No. 2:26-CV 00235-ART-BNW, 2026 WL 1257028, at *4 (D. Nev. May 6, 2026) (finding a due process violation where the IJ "failed to apply the correct legal standard as required by due process"); *Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) ("Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." (collecting cases)); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *10 (C.D. Cal. Mar. 5, 2026) ("Given Miri's inadequate bond hearing, Miri's continued detention fails to comply with his constitutional due process rights."); *W.T.M.*, 2026 WL 262583, at *4 (bond denial was "constitutionally deficient, because there are no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk"); *Segura Serrano v. Scott*,

No. 2:26-CV-01268-LK, 2026 WL 1469639, at *7–8 (W.D. Wash. May 26, 2026); *Sanchez Henao v. Hernandez*, No. 2:26-CV-00707-LK, 2026 WL 1492714, at *7 (W.D. Wash. May 28, 2026).

**D. Remedy**

Because Chen's February 19, 2026 bond hearing was legally and constitutionally inadequate and the subsequent bond redeterminations relied on the IJ's finding at the February 19, 2026 bond hearing, and because the Court finds no adequate basis for Chen's continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano*, 2026 WL 969764, at *6 (ordering petitioner's immediate release after finding no basis for continued detention); *Miri*, 2026 WL 622302, at *12 (ordering habeas petitioner's immediate release after finding IJ abused discretion in denying petitioner's request for bond).

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS the petition for a writ of habeas corpus, Dkt. No. 1, and orders as follows:

(1) Respondents shall release Chen from custody within 24 hours under terms consistent with Section 1226(a) and return her personal property to her;

(2) The parties shall file a Joint Status Report by September 11, 2026, confirming that Chen has been released;

(3) Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr.*

*Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 9th day of September, 2026.

Lauren King
United States District Judge